of the U.S. Department of Justice and the U.S. Attorney General of the U.S. Department of Justice. Good morning. May it please the Court, Tulio Suarez-Thalette on behalf of the petitioner Jose Gonzalez, and I appreciate the opportunity to appear before you today and address the issues raised on the petition for review and any questions the panel may have concerning the arguments briefed in this matter. And in that context, I'd like to suggest that the question before the Court is relatively straightforward, and it deals with the intent of 8 U.S.C. section 1227A1A, and whether the intent of that statute, when it calls for removing an alien who is found to have been inadmissible at the time the decision took place, the decision to adjust their status or admit them was made in accordance with the law at the time, whether that's meant to provide the government with the unrestricted, unfettered ability to re-adjudicate a decision as to the admission or adjustment status of a non-citizen alien at any time until such time as that person becomes a citizen, or whether that statute is merely meant as a tool for the government to remedy an error in the application of facts to law at a particular point in time. And if it's the second, we would submit that the government cannot meet its burden in this particular case, because there's no evidence in the record that at the time Mr. Gonzalez was granted adjustment status to that of lawful permanent resident, his conviction under Florida Statute 843.01 for resisting arrest with violence was, as a matter of law, recognized to be a crime involving moral turpitude. But is your argument that there has to be case law at the time somebody is convicted before a crime can be found to be one involving moral turpitude? No, Your Honor. So let's say that Kano did not exist, our decision in Kano did not exist. We would have to decide today whether or not Mr. Gonzalez's conviction for resisting arrest with violence constituted a crime of moral turpitude, right? Yes, Your Honor. So how does that make it any different from the situation we find ourselves in today? Sure, and that is a very good question, and I believe has been misunderstood through the whole entire process in this case. There's a significant difference, Your Honor, between an applicant for adjustment of status and a lawful permanent resident who the government's trying to take that lawful permanent status away. When an alien is applying for adjustment of status, it's their burden to establish that they're admissible. And so if, let's say Mr. Gonzalez was applying for lawful permanent residence today, and he had a 1998 conviction for resisting arrest with violence, an adjudicator today applying the state of the law today could say that 1998 conviction was a crime involving moral turpitude. And why is that? Because of Kano? In part, yes, Your Honor, and a review of the elements of the offense, and in the review if it was subject to a modified categorical approach, a review of the record of conviction. But in 1998, that was not the case. In 1998, there was no president that clearly would establish that. But there was no president when this court decided Kano, right? Correct. So how is it different? Well, the difference, Your Honor, is that in Kano, the question was before the court whether that person was inadmissible at that time. The question before the court now was whether the person was inadmissible in 1998. Your argument then is that in an inadmissibility scenario, you can always decide crime of moral turpitude in the future, even though there was no case law at the time of the conviction, but that it's different when the government is trying to withdraw or take away someone's permanent residence? Yes, Your Honor, because… Okay, so if you're writing the book on how this is done, what is it that we're supposed to look at? We're supposed to look at the law in 19… When was he convicted? 1998. So we're supposed to look at the law existing at that time to determine whether or not this crime was one involving moral turpitude? Yes, Your Honor, and it's not I that suggested, but the statute. The statute says that determination as to whether the person was inadmissible at the time of adjustment is made in accordance with the law at the time. And so I'm not suggesting… Are you arguing that the law changed? The same statute changed? Your Honor, what I'm arguing is that… Can you answer that question? Yes, it's… The statute changed. No, what I'm saying is that it's not my burden to establish… I'm not talking about burden. I just want to know if the statute changed. Your Honor, the statute addresses what's a term called a crime involving moral turpitude. A crime involving moral turpitude… I want to know if the statute changed. The Florida statute. It didn't. The Florida statute didn't change. It's an interpretation of the statute. It's a question of law, whether or not it's a crime of moral turpitude. Right. It's an application of that term to the conviction. Yes, Your Honor. That's just an interpretation. It's the same question, whether the interpretation today is different from the one tomorrow. Or if there was no interpretation on the books yesterday, does that mean there was… What's that mean? That means today if we decide it was a crime of moral turpitude like under Cano, we're deciding it for the first time and we're changing the law. You're either changing the law or you're establishing the law or clarifying the law. Well, for your purposes, we're changing it. You think there has to be precedent on the books at the time of the conviction in a scenario like this one? No, Your Honor. I'm saying… Is your argument based on, the core of your argument based on the burden of proof? That in a admissibility case, the burden is on the applicant, whereas in a removal case, the burden is on the government, and that's the key difference? Yes, and the fact that the burden of proof refers to a statute that has an element, what the law at the time that the decision was made… I understand that. I understand that. But it's a burden of proof. You think that's the distinguished factor here? Yes, Your Honor. Well, the facts are undisputed. The facts are undisputed and it's a pure question of law. Yes, Your Honor. So, in those circumstances, the burden of proof doesn't mean… The burden of proof means, it addresses the facts, basically. You prove the fact that he's not eligible for admission. Except, Your Honor… But the question is, the facts are undisputed. Except, Your Honor… It creates a pure question of law. Except, Your Honor, we're doing… Are you arguing that the government had to convince somebody at that time that it was a crime of moral turpitude? Of course they said it was. All you can do is argue. No, Your Honor, they didn't say that because they approved his application. They granted him lawful permanent residence. With knowledge of the conviction? They had knowledge… Well, let me put it this way, Your Honor. The government claims they didn't have knowledge of the conviction. The record of proceedings does not reflect that. It actually reflects the opposite. As part of the proceedings, the government provided a copy of the applicant's adjustment application where it indicated he had been arrested. And the government says, we didn't have the records. It was just an allegation that was abandoned in proceedings because there was no evidence to that effect. So the record of proceedings before the court leaves no conclusion other than there was a decision to grant him lawful permanent residence. Fifteen years later when he applied for citizenship, somebody looked at that in light of Cano and said, wait a minute. That's a crime involving moral turpitude. And what I'm saying is that in order for them to be able to go back and make a new decision on that, they had to make it according to… They didn't need to look at Cano. They just say it's a crime of moral turpitude. I mean, what do they look at? If the statute hasn't changed, what does the government look at? They just make a decision like what Schofield is saying about whether a crime involves moral turpitude. What else are they supposed to look at? But in order for them to establish that the crime was a crime involving moral turpitude, in light of the fact that the term crime involving moral turpitude is not a term defined by statute. And based on the Board of Immigration Appeals case law, it's a term that can vary from one period of time to the next. Well, but let's go down that. I want to go over your time for a second. But here, if that's your view, there is a decision by the Board of Immigration Appeals in 1988 called Matter of Dinesh. And it holds that aggravated assault on a police officer because it involves violence to intentionally interfere with the lawful functions of a peace officer is a crime of moral turpitude. It seems to me that that decision is materially indistinguishable from resisting arrest with violence, which also involves the use of some violence or some force to interfere with the lawful functions of an officer. So if your argument is that you have to look at what people or the community thought of moral turpitude at the time of the conviction, you've got a BIA presidential decision saying something pretty close to that, do you not? Well, on an unrelated statute, Your Honor, my response would be that that is why the fact that the United States Citizenship and Immigration Services Administrative Appeals Unit in a decision just a week before this court's decision in Cannell found that resisting arrest with violence in violation of the Florida statute was not a crime involving moral turpitude. I know, but you're saying that you're supposed to look at the state of the law at the time of the conviction, and that postdates the time of conviction. If you can look at what the USCIS did, then you can look at Cannell too. And in a fight between those two, Cannell wins. Yeah. Respectfully, Your Honor, that's not what I'm saying. What I'm saying is that the fact that just a week before Cannell, the agency was saying it's not a crime involving moral turpitude leads to the conclusion that in 1998, they found it wasn't a crime involving moral turpitude. And for them to go back today to do it is unfair. We understand your point, and you've saved some rebuttal time. Thank you, Your Honor. Mr. Lott. May it please the Court, Melissa Lott on behalf of the United States Attorney General. The Court should deny the petition for review. The Board of Immigration Appeals correctly decided that the petitioner was removable on the basis that he was inadmissible at the time he adjusted status in 1998 under the law existing at that time. In 1998, as now, the elements of resisting a police officer with violence require that the defendant knowingly and willfully resisted, obstructed, or opposed an officer engaged in lawful execution of a legal duty by offering or doing violence to the person of the officer. And as noted, this Court has previously confirmed in Cannell that the same statute of conviction was a crime involving moral turpitude, and there they relied on matter of Dinesh. The agency here considered Cannell and looked to the Board's prior recognition that violence against an officer is a crime involving moral turpitude. The petitioner's statute of conviction fits within the Board's guidance in matter of Dinesh in that it requires knowledge by the accused that he was assaulting a police officer, engaged in the performance of his duties, and requires force and violence. Cannell confirmed this. Even though Cannell was issued many years after petitioner's 1998 conviction and therefore did not itself exist at the time of the 1998 adjustment of status, its reasoning and reliance on matter of Dinesh confirmed that resisting an officer with violence has at all relevant times been a crime involving moral turpitude, and the Board was correct in its decision here. Can you tell us a little bit, although I think it's somewhat distinguishable, about the USCIS ruling or decision that Mr. Gonzalez has pointed to in his brief? The one that came out right before Cannell? Yes. Okay. And the reasoning there, is that what, in my understanding? No, your view of it, how it arose, why it matters, why it doesn't matter, why it's distinguishable, why it's wrong. In our view, that case doesn't matter. It's unpublished. It's not precedent. It's just a decision by the adjustment officer, and it's not binding on this court in any way. What was the rationale of that? Although it was a single officer, what was the rationale provided, if any? My understanding is that, and this isn't anything that the agency decided, but just from, in order to respond to your question, just from looking at the decision, the USCIS decision in the record, I believe that there were a couple reasons that the adjustment officer found that it wasn't a crime involving moral turpitude, and one was that it was simple assault. But I don't think that's correct because the adjustment officer cited a Florida case, GLN, where a juvenile defendant punched and shoved a, I believe it was a school resource officer. So I think that that shows violence, and I think that that would be distinguishable from something like battery, for instance, simple battery where it would be an offensive touch. The Florida statute also extends to offering to do violence against a police officer, but Florida courts have said that an offer to do violence is pretty much the same thing as an attempt. And under a longstanding board precedent, an attempted crime involving moral turpitude, or I'm sorry, an attempt offense, if the underlying offense involves moral turpitude, the attempt offense does as well. You say in your brief that both the Florida statute and the INA provision dealing with moral turpitude have remained unchanged since the time of Mr. Gonzalez's conviction and adjustment to now. Yes. Is that correct? Yes, Your Honor. If there are no further questions, then I would respectfully request that the court deny the petition for review. Thank you. Mr. Thurow, I asked the question about the difference of burden of proof, whether you seek admissibility, where it would be the applicants versus the government's burden worth removal proceedings. Yes, Your Honor. Okay. And you said there was a distinction. That was meaningful. It should be meaningful in this decision. So I went back to look at Cano because I thought that was, Cano was exactly the same. And I found, in fact, it is. Cano's circumstances were exactly the same. He had his status adjusted to a permanent lawful resident in the United States and it was removal proceedings and he was being deported. So it seems to me Cano is factually and procedurally exactly the same as Mr. Gonzalez's case regarding burden of proof. Well, Your Honor, I respectfully disagree. That's not my understanding. In Cano's case, although he was a removable individual, he was removable. He wasn't a lawful permanent resident, in other words. You say he was or was not? He was not. Well, it said nine years later his status was adjusted to that of a lawful permanent resident. I'm reading from the background information in the Cano case. I don't have the decision in front of me, Your Honor, and I apologize. But the He goes on to say, next paragraph, Cano argued that the IJ should not be deported because of violation of Florida Statute 853, was not a crime involving moral turpitude. So it seems to me it's Your Honor, I'm sorry. My recollection, I made a mistake. The question in that case was whether Cano had committed a crime involving moral turpitude after he was a resident. So he was a resident, he committed a crime, and the question was whether that was a crime involving moral turpitude, and therefore he was removable for the crime he committed after being a lawful permanent resident. In this case, Mr. Gonzalez's conviction occurred before he was granted lawful permanent resident. And he revealed that conviction, and the government made a decision that, okay, you're still eligible. At that time, they could have said you're not eligible, and he would have had the opportunity to apply for a waiver. They didn't do that. So it's not an issue of burden of proof then. The question, you've now phrased it, is a question of when the conviction took place vis-à-vis his status adjustment. Your Honor, the question Is that it? Well, not exactly. The question is I need to know what your argument is. At one time you told it was a burden of proof, and it clearly doesn't seem to be that. But now you're saying it's because he was convicted after he was adjusted. Your Honor, to clarify, the reason it's a burden of proof issue is because the statute that Mr. Gonzalez is being removed under is different than the statute Mr. Cano was removed under, and the statute that Mr. Gonzalez is being removed under, as an element of the ground of removal, looks at the law at the time. And so, therefore, if, you know, there was reference to the AO decision, and your Honor referred to Matter of Dinesh. The AO decision reviews Matter of Dinesh, and looks at the issue regarding aggravated assault of a police officer, and looks at the specific statute, and says, we find it's not a crime involving moral turpitude. A week later, this court issues a decision totally contrary to that finding. So, our position is that at the time that the government seeks to remove Mr. Gonzalez, it's their burden of proof to show that the decision they made in 1998 was a wrong decision as a matter of law. That it's clear under the law it was a wrong decision. And our position is they can't do that, because even a week before this court's decision in Cano, they were still holding the same position, that it's not a crime involving moral turpitude. And so, therefore, they didn't make a mistake. They're now looking at it with new eyes. And Cano applies an analysis that has evolved significantly through Matter of Silva Trevino in 2006, U.S. v. Descamps, and later this court's decision in 2012. That analysis of the categorical approach as to this particular statute did not exist in 1998. And we're simply saying, again, as I said in the beginning, the question is relatively straightforward. What is the intent of 8 U.S.C. 1227? Is it to look back at any time, or to just correct a mistake? And if it was the latter, there was no mistake. They unpurposely said, you're eligible. And then thank you for your time. We have your case. We'll move to the last case, Jordan v. Darien.